UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BROOKE A. MEDAS, *et al.*, | ) | Case No.: 1:14 CV 1253 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| MICHAEL MARESH, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court are Defendant Joel Gaiser's ("Gaiser" or "Defendant") Motion for Summary Judgment (ECF No. 18), and Defendant's Motion to Strike Plaintiffs' Expert Report (ECF No. 23). For the following reasons, Defendant's Motion for Summary Judgment is granted. Because the court finds that even upon consideration of Plaintiffs' Expert Report, summary judgment in favor of Defendant is appropriate, the court denies Defendant's Motion to Strike as moot.

**I. BACKGROUND**

In June, 2012, Plaintiff Brooke A. Medas ("Medas") was placed on probation in the City of Parma, Ohio (Compl. at ¶ 28, ECF No. 1.) Her probation officer was Defendant Michael Maresh ("Maresh"), who began flirting with Medas after their initial probation meeting. (*Id.* at ¶¶ 28–29.) On June 21, 2012, Maresh went to Medas's residence and sexually assaulted her. (*Id.* at ¶ 30.) Medas subsequently reported the assault to the police, and Maresh was immediately fired. (*Id.* at ¶ 32.) Medas's daughter, Plaintiff Z.M., saw Maresh at the house a few days after the initial assault, and was required to give the police a statement identifying him. (*Id.* at ¶ 32.) On June 17, 2013, Maresh was convicted of two counts of sexual battery. (*Id.* at ¶ 33.)

Joel Gaiser was the deputy bailiff with the Parma Municipal Court. (Gaiser Dep. at 4:9-10, ECF No. 17-1.) When Maresh applied to be a probation officer in July 2011, Gaiser conducted an initial screening interview, and passed his resume to the three judges on the court. (*Id.* at 18:15–19:12, 20:8–13.) The judges interviewed Maresh and another candidate, and were impressed with both. (Spanagel Dep. at 24:18–25:13, ECF No. 16-1.) The judges decided to hire the other candidate and offer a part-time bailiff position to Maresh, with the possible option of moving him into the next available probation officer position. (*Id.*) One or multiple of the judges asked Gaiser to request background checks on Maresh and the other candidate, but both were hired immediately. (*Id.* at 29:15–30:18.)

A police detective gave Gaiser the completed reports about a month later, and pointed out that Maresh's background presented concerns. (Pls.' Opp'n at 6–7, ECF No. 21.) The background check stated:

> (1) Maresh was a subject in an investigation involving abuse of a minor at age 9;
>
> (2) Maresh was the suspect in a sexual imposition investigation when he was 15. His cousin reported that Maresh touched her inappropriately, but the cousin's family requested no further action be taken and the case was closed without further investigation;
>
> (3) Maresh wrote that he hates reading "unless it's a porno" and listed the comic book character Batman as a hero on his social media website MySpace account; and
>
> (4) The commander of the Parma Auxiliary Police, a volunteer police division, had declined to hire Maresh because he had found "too many red flags."

("Background Report") (*Id.* at 7; Bailiff Background Report, ECF. No. 21-1 at 49–51.)

Gaiser told one of the hiring judges that there were "some red flags" in the Background Report, including that Maresh had made an inappropriate comment on social media, but that he did not think that the information was serious enough to stop the court from hiring him or to fire him. (Pls.' Opp'n at 7–8, ECF No. 21.) The judge testified that he would have asked Gaiser if there were

-2-

any convictions, and that Gaiser told him there were none. (*Id.* at 8.) That was the extent of any communication between Gaiser and the judges, and Gaiser did not provide a physical copy of the background check to any of the judges. (*Id.*) When the next parole officer position became available, the judges moved Maresh into that position without completing another background check or investigating Maresh any further. (*Id.* at 10.)

Plaintiffs brought a civil rights suit against the three judges and the Parma Municipal Court in the Cuyahoga County Common Pleas Court in 2013. (Def.'s Mot. at 5, ECF No. 18.) The judges and the court were dismissed from the suit following their unopposed motions to dismiss. (O'Donnell Aff. ¶¶ 6–9, ECF No. 18-6; Case Docket, ECF No. 18-6, p. 3.) Plaintiffs brought the instant suit in June 2014, asserting § 1983 claims against Gaiser in his individual and official capacities and state law claims for willful, wanton, and reckless conduct and loss of consortium. Gaiser filed a Motion for Summary Judgment on January 16, 2015, and Plaintiffs filed an Opposition on March 4, 2015. In their Opposition, Plaintiffs rely in part on a report filed by their expert Daniel E. Peterca ("Peterca Report") (ECF No. 21-6), which Gaiser now seeks to strike for a variety of reasons. The court will address the Motion for Summary Judgment first.

## II. SUMMARY JUDGMENT LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

-3-

>or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim;" or (2) demonstrating "to the [c]ourt that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 870 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Id.* Moreover, "the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted).

### III. SUMMARY JUDGMENT LAW AND ANALYSIS

Plaintiffs bring federal and state law claims against Gaiser. Gaiser moves for summary judgment on all of Plaintiffs' claims, alleging that: (1) Plaintiffs' § 1983 claims are untimely; (2) Plaintiffs' § 1983 claims fail on their merits because Defendant cannot be shown to have violated Plaintiff Medas's rights; (3) Plaintiffs have failed to state a proper state law claim; (4) Defendant is entitled to state law immunity; and (5) the loss of consortium claim fails because Plaintiffs' primary claims fail.

### A. Plaintiffs' § 1983 Claim

Plaintiffs bring a claim under 42 U.S.C. § 1983 against Gaiser in his official and individual capacities for "deliberate indifference to the rights and safety of future probationees under the care of Defendant Maresh," which "resulted in the unlawful and unconstitutional conduct of [Gaiser's] employee . . . Defendant Maresh." (Compl. at ¶¶ 7, 56-57.)

Section 1983 creates a federal cause of action against "[e]very person who, under color of [law,] . . . subjects . . . any citizen . . . to the deprivation of any rights . . . secured by the Constitution." 42 U.S.C. § 1983. Defendant argues that Plaintiffs' 1983 claim must fail because:

(1) Plaintiffs' claims are untimely; (2) "Plaintiffs have failed to demonstrate that [Gaiser] deprived Plaintiff of a right secured under federal law"; and (3) "a section 1983 claim cannot be based solely on a theory of respondent superior." (Def.'s Mot. Dismiss at 16, 18-19.) The court will address the timeliness issue first and then address the substance of Plaintiffs' claim.

### 1. Timeliness of § 1983 Claim

Defendant argues that Plaintiffs filed their § 1983 claim after the statute of limitations had run, contending that the court should apply Ohio's one-year statute of limitations for assault and battery. Consequently, Defendant argues that Plaintiffs needed to file their § 1983 claim by June 22, 2013, for it to be timely. The court finds Defendant's argument is not well taken.

Defendant relies solely on *Drake v. Ohio Bd. of Educ.*, 642 F.2d 451 (6th Cir. 1980) to support his argument that Ohio's one-year statute of limitations for assault and battery should apply here. However, after *Drake*, the Supreme Court has held that the statute of limitations for a § 1983 claim shall be the general or residual statute of limitations for personal injury actions under the law of the state where the action was brought. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 124 (2005) (reasserting the rule from *Wilson*).

Following these Supreme Court decisions, the Sixth Circuit has repeatedly held after *Drake* that the governing provision for § 1983 claims in Ohio is O.R.C. § 2305.10, which provides that a cause of action for personal injury shall be brought within two years of accrual. *E.g.*, *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (quoting *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc)); *see also Hendricks v. DesMarais*, No. 13-4106, 2015 U.S. App. LEXIS 9756, at *5 (6th Cir. Mar. 18, 2015) ("Section 1983 actions arising in Ohio are subject to that state's two-year limitations period for personal injury actions.") (citing *Banks*, 344 F.3d at 553). The Sixth Circuit has also stated that, "[i]n actions brought under § 1983, the statute of limitations begins to

run when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (citing *Kelly v. Burks*, 415 F.3d 558 (6th Cir. 2005)).

Given the well-established law, the court applies the two-year statute of limitations. The Complaint indicates and the parties do not dispute that the assault occurred on June 21, 2012. (Compl. at ¶ 30, ECF No. 1.) Plaintiffs' claim would have accrued on that date. For their claim to be timely, Plaintiffs had to file their § 1983 claim by June 22, 2014. Since Plaintiffs filed the current claim on June 10, 2014, the court finds Plaintiffs' § 1983 claim was timely. Thus, the court rejects Defendant's untimeliness argument and will address the merits of Plaintiffs' claim.

### 2. Merits of Plaintiffs' § 1983 Claim

Plaintiffs base their § 1983 claim against Defendant in his official and individual capacities on the argument that Defendant was aware of several red flags in Maresh's Background Report, yet intentionally chose to withhold the information from the judges that "signed off" on Maresh's hiring. (Pls.' Opp'n at 15, ECF No. 21.) Plaintiffs contend that, if Defendant had investigated further or properly considered the contents of the Background Report, Defendant "would have concluded that Maresh did not have [the] character to work as a probation officer and that the battery committed against Plaintiff Medas was a highly likely and plainly obvious risk and/or consequence of the hiring and/or promotion decision." (Compl. at ¶ 55, ECF No. 1.) Plaintiffs argue that such behavior rises to the level of deliberate indifference. The court finds that Plaintiffs' arguments fail on both their official and individual capacity claims, and thus the court need not address whether Defendant is entitled to qualified immunity.

### a. Official Capacity

A suit against an official of the state is treated as a suit against the municipality itself. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). The plaintiff must prove two basic elements: (1) that an underlying constitutional violation occurred; and (2) that the municipality "is responsible for that violation." *Estate of Harbin v. City of Detroit*, 147 F. App'x 566, 569 (6th Cir. 2005); *Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004).

As an initial matter, the court finds that a reasonable jury could find that Maresh violated Medas's constitutional rights. Plaintiffs allege that Maresh was convicted for sexual battery against Medas, an act which deprived her of her constitutional rights to bodily integrity and freedom from excessive force. (Compl. at ¶¶ 33, 38-39, ECF No. 1; Pls.' Opp'n at 1, ECF No. 21.) The Sixth Circuit has stated that "no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause." *Doe v. City of Roseville*, 296 F.3d 431, 438 (6th Cir. 2002). Thus, a reasonable jury could find that a constitutional violation occurred.

The court's next inquiry is whether the municipality is responsible for that constitutional violation. Municipalities cannot be liable based on traditional theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. *Monell*, 436 U.S. at 694. This can be done in one of the following ways: Plaintiffs can show (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified the illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Plaintiffs have not pointed to any illegal policy or legislative enactment, challenged the training or supervision of Maresh, or presented any previous instances of constitutional violations to establish a custom of tolerance or acquiescence. Plaintiffs seem to rely on the fact that Defendant

-8-

was a policymaking official with hiring authority, which Defendant contests. However, the court need not decide this issue because even if Defendant was an official with final policymaking authority, Plaintiffs have not shown that Defendant's municipal action was taken with "deliberate indifference" because Maresh's background made it "plainly obvious" that he would sexually assault Medas. Thus, Plaintiffs' § 1983 claim against Defendant in his official capacity fails as a matter of law.

### i. Legal Standard for Municipal Liability for Hiring Decision

The Supreme Court has held that for a municipality to face liability under § 1983 for its hiring decision, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). The "deliberate indifference" standard is "a stringent standard of fault, requiring proof that a municipal actor [consciously] disregarded a known or obvious consequence of his action." *Id.* at 410, 415. As the Court explained:

> [O]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Brown*, 520 U.S. at 411. The Court explicitly stated that "[a] showing of simple or even heightened negligence will not suffice." *Id.* at 407.

The Supreme Court has also stated that "[c]ases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause." *Brown*, 520 U.S. at 405, 415. The Court then concluded that "[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410 (emphasis in original). Thus, "[t]he connection between the

-9-

background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412-14; *see also Jefferson County v. Lindsay*, 124 F.3d 197, 1997 WL 602573, at *15 (6th Cir. Sept. 29, 1997) (promotion of officer despite record of inmate abuse and alleged knowledge of derogatory remarks toward homosexuals did not adequately present a direct causal link between the purported custom of tolerating inmate abuse and disrespect for homosexuals and the particular injuries suffered by the homosexual plaintiff to support a § 1983 claim).

In *Brown*, the Supreme Court held that a sheriff's inadequate review of a deputy's background, which contained a record for assault and battery, resisting arrest, public drunkenness, and numerous traffic offenses, was insufficient to amount to "deliberate indifference" to plaintiff's constitutional needs. 520 U.S. at 414-15. The Court found that there was insufficient evidence to support a finding that the sheriff's decision to hire the deputy reflected "conscious disregard" such that the excessive force was a "plainly obvious consequence" of the hiring decision. *Id.* ("[w]hether Sheriff Moore failed to examine Burns' record, partially examined it, or fully examined it, Sheriff Moore's hiring decision could not have been 'deliberately indifferent' unless in light of that record Burns' use of excessive force would have been a plainly obvious consequence of the hiring decision"). Thus, the Court concluded that the plaintiff's § 1983 claim for the deputy's excessive force resulting in severe injury should not have been submitted to the jury. *Id.*

The Sixth Circuit follows the standard articulated in *Brown*. *See, e.g.*, *Siler*, 443 F. App'x at 55-56 (6th Cir. 2011) (granting summary judgment to the county on plaintiff's § 1983 claim, because the officers' citation for operating a vehicle without a license and charge of domestic violence did not make it "plainly obvious" that they would physically assault plaintiff, and the county's failure to screen did not amount to "deliberate indifference"); *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 963 (6th Cir. 2006) (granting summary judgment to defendants on plaintiff's § 1983 claim because the custodian's criminal record did not make it "plainly obvious"

-10-

that he would rape plaintiff, and plaintiff failed to show that the county executive was "deliberately indifferent" to plaintiff's constitutional rights by hiring the custodian).

### ii. Application of the Legal Standard

Plaintiffs argue that disputed issues of fact remain, relying on their expert's conclusion that Defendant was "willful and reckless" and indifferent. (Pls.' Opp'n at 15-16, ECF No. 21.) Plaintiffs also argue that *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 963 (6th Cir. 2006) supports their conclusion that Defendant was "deliberately indifferent" to the constitutional rights of Medas. (Pls.' Opp'n at 14, ECF No. 21.) Plaintiffs' rationale is that in *Magoffin*, the Sixth Circuit stated that the court custodian's criminal record did not reveal violent crimes and the crimes that the custodian was allegedly charged with did not demonstrate any propensity to commit sex crimes or imprison someone, such that it was "plainly obvious" that the defendant would sexually assault a juvenile or lock her in a room against her will. Plaintiffs contend that contrary to *Magoffin*, Maresh's Background Report "present[ed] evidence that [Maresh] had a propensity to commit sex crimes." (Pls.' Opp'n at 13-14, ECF No. 21.) The court finds that these arguments are not well taken.

The Sixth Circuit explained that "although expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues." *Magoffin*, 174 F. App'x at 974 (citing *Williams v. Ford Motor Co.*, 187 F.3d 533, 543 (6th Cir. 1999)) (failure to mention expert's affidavit did not preclude summary judgment on § 1983 claim). Similar to *Magoffin*, Plaintiffs' expert report presents only incorrect, conclusory statements of law, such as Gaiser's "failure to perform []due diligence represented willful and reckless conduct" and Gaiser was "indifferen[t] in professionally completing these tasks[.]" (Peterca Report at 5-8, ECF No. 21-6.) The Supreme Court made clear in *Brown* that Gaiser's allegedly negligent failure to examine Maresh's record does not give rise to

-11-

"deliberate indifference," unless in light of the record, Maresh's sexual assault on Medas was a "plainly obvious consequence of the hiring decision." Plaintiffs cannot meet that high burden.

As stated in *Magoffin*, "[i]n light of *Brown*, the mere fact that a prior crime and the later constitutional violation both include violence is not sufficient to demonstrate that the fiscal court was deliberately indifferent." 174 F. App'x at 968. Here, the Background Report included information that: (1) when Maresh was nine years old, he was the "subject" of an investigation into a claim of abusing a minor; (2) when Maresh was fifteen years old, he was listed as a suspect of sexual imposition involving his female cousin but he was not charged with a crime; (3) Maresh's MySpace page contained a statement that he did not like reading "unless it's a porno" and listed Batman as one of his heroes; and (4) Maresh was not hired as a voluntary auxiliary police officer in Parma because the commander thought Maresh had "too many 'red flags.'" None of these issues have a strong enough connection to constitute "deliberate indifference" such that there is a direct causal link between Defendant's hiring decision and the underlying constitutional violation.

Defendant correctly points out that the Background Report shows no criminal convictions, whereas in *Brown*, the deputy's background of misdemeanor convictions did not rise to the level of "deliberate indifference." (Def.'s Reply at 3, ECF No. 22.) Furthermore, the Background Report shows no convictions for sex crimes, and Maresh was not charged in either investigation. The investigations (only one of which seems to clearly relate to a sexual event) and a comment indicating a heightened level of interest in pornography simply do not amount to a showing of "a propensity to commit sex crimes." Additionally, Maresh was a minor when he was involved in the investigations. More than nine years had passed since the last investigation with no indication that Maresh had committed or was investigated for any sex offenses. Furthermore, Parma Auxiliary Police's decision not to hire Maresh due to "red flags," which perhaps was an indication that Maresh

was not a good choice for the position, is insufficient to demonstrate that the fact that Maresh would sexually abuse a probationee would be a "plainly obvious" consequence of the decision to hire him.

There is simply not a strong enough connection between the information in the Background Report and the alleged constitutional violation to establish that Gaiser was "deliberately indifferent" for hiring or failing to investigate Maresh, even if he was a policymaking official with hiring authority. Based on the legal standard outlined in *Brown* and followed by the Sixth Circuit, no reasonable juror could find that the issues raised in the Background Report would lead a reasonable policy maker to conclude that a sexual assault of probationee Medas by Maresh was the "plainly obvious" consequence of hiring Maresh as a probation officer. Thus, the court grants Defendant's Motion for Summary Judgment as to the § 1983 claims against him in his official capacity.

### b. Individual Capacity

The Sixth Circuit has explicitly stated that when a defendant is not "deliberately indifferent" to the plaintiff's constitutional rights, he "is not liable in his individual capacity for his hiring practice[.]" *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 969 (6th Cir. 2006) ("Because the Supreme Court's concern in *Brown*--that municipalities not become vicariously liable--is equally implicated when supervisors are sued in their individual capacities, *Brown's* analysis is relevant to [plaintiff's] claim against [defendant] in his individual capacity."). Additionally, "for suits both against municipalities and individual-capacity supervisors, 'respondeat superior is not a proper basis for liability under § 1983.'" *Id.* at 969 (citing *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006)). Moreover, "negligence or recklessness is not enough to hold supervisors liable under § 1983." *Id.* (citing *Doe v. Claiborne Cty.*, 103 F.3d 495, 513 (6th Cir. 1996)).

As with Plaintiffs' claims against Defendant in his official capacity, Plaintiffs have not established that Defendant was "deliberately indifferent" to her constitutional rights in hiring Maresh, such that Maresh's sexual battery against Medas was a "plainly obvious" consequence of

the hiring decision. Thus, the court grants Defendant's Motion for Summary Judgment as to Plaintiffs' § 1983 claims against him in his individual capacity. As such, the court need not address whether Defendant is entitled to qualified immunity.

## B. State Law Claims

Plaintiffs allege state law claims of willful, wanton and reckless conduct and loss of consortium. (Compl. ¶¶ 50-51, 58-59, ECF No. 1). The court finds that neither the willful, wanton and reckless conduct claim nor the loss of consortium claim are viable.

### 1. Willful, Wanton and Reckless Conduct

Plaintiffs contend that a reasonable jury could find Defendant liable under an Ohio negligent hiring claim and that Defendant's conduct was "reckless," and thus Defendant's Motion on this claim should fail. (Pls.' Opp'n at 17-19, ECF No. 21.) Plaintiff also argues that they have alleged "willful, wanton, and reckless conduct" to pierce the veil of state law immunity in O.R.C. § 2744.03. (Pls.' Opp'n at 17, ECF No. 21.)

Defendant correctly argues that "willful, wanton, and reckless conduct" is not an independent cause of action under Ohio law. *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 643 (N.D. Ohio 2014) (citing *Cincinnati Ins. Co. v. Oancea*, 2004 Ohio 4272, 2004 WL 1810347, *3 (Ohio App.)) ("Ohio law does not recognize a stand-alone cause of action for recklessness."); *Bradley v. City of Cleveland*, No. 1:11CV781, 2012 WL 775106 at *3 (N.D. Ohio March 7, 2012) (citing *Griggy v. City of Cuyahoga Falls*, No. 22753, 2006–Ohio–252 (Ohio Ct. App. 2006), at ¶ 8) (dismissing "willful, wanton, and reckless conduct" claim because it "does not stand as [a] ground for relief in Ohio"). Plaintiffs do not clearly state a claim for negligent hiring under Ohio law in their Complaint, but they do allege that Defendant was "willful, wanton, and/or reckless" when "he hired and or recommended for hire . . . Maresh[.]" (Compl. at ¶ 51, ECF No. 1.) Even construing Plaintiffs' allegations as a state law claim for negligent hiring, the court finds that Plaintiffs' claim fails.

-14-

The Ohio Supreme Court has stated that "reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 983 N.E.2d 266, 273 (Ohio 2012) (citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105 (1990)). Some Ohio courts, following the definition in *O'Toole v. Denihan*, 889 N.E.2d 505, 517 (Ohio 2008), emphasize the high degree of the reckless standard by requiring the conscious disregard of the risk to be "perverse." *See Webber v. Lazar*, Nos. 26188, 26463, 2015 WL 2452340 (Ohio Ct. App. May 15, 2015).

Ohio courts have explained that "showing recklessness is subject to a high standard." *Brenner v. Cuyahoga Cnty. Dep't of Children & Family Servs.,* 2009–Ohio–1253, at ¶ 18 (Ohio Ct. App. 2009) (granting summary judgment, finding that the social worker was not reckless where she helped reunite a baby with her mother after being informed that the mother seemed like she did not want to be a parent, was "stressed and depressed," and was being "too rough" with the baby, and the mother later pled guilt to involuntary manslaughter after the baby died from blunt head trauma); *Aratari v. Leetonia Exempt Village Sch. Dist.*, 2007–Ohio–1567 (Ohio Ct. App. 2007), at ¶67 (granting summary judgment, finding that the school district, superintendent, and principal were not reckless, where they allowed a boy with a disciplinary history of fighting, putting a student in a "sleeper hold," disruption in class, and language infractions to return to school, where he criminally assaulted another student).

For many of the same reasons that the court found Defendant's behavior not "deliberately indifferent," the court also finds that no rational trier of fact could find that Defendant's actions were "reckless." As the court previously explained, Plaintiffs' expert report makes incorrect conclusory statements that failure to perform due diligence or negligent acts equates to recklessness. *See supra* at 11. (Peterca Report at 5-8, ECF No. 21-6.) That is not the standard.  Like the court stated in

-15-

*Brenner*, there is insufficient evidence in this case that Defendant "was conscious that h[is] conduct would, in all probability, result in injury, and was therefore reckless." Many of the items contained in the Background Report were completely unrelated to sexual assault. The two investigations from when Maresh was nine years old and fifteen years old, respectively, were too remote in time and speculative. Maresh was never charged or convicted of any sexual offense to put anyone on notice that Maresh would "in all probability" sexually abuse Medas. Thus, the court dismisses this claim as a matter of law.

### 2. Loss of Consortium

Plaintiffs and Defendant agree that a claim for loss of consortium is derivative to the underlying tort claims. (Def.'s Mot. at 20, ECF No. 18; Pls.' Opp'n at 20, ECF No. 20.) *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 970-71 (6th Cir. 2007) (stating that a claim for loss of consortium is a derivative action and "can be maintained only so long as the underlying actions remain viable"). Since there are no remaining underlying torts against Defendant, the court finds that Defendant is entitled to summary judgment in his favor on the state law loss of consortium claim.

### IV. MOTION TO STRIKE

Defendant also moves this court to strike the Peterca Report because (1) Gaiser relied on Plaintiffs' interrogatory answer in another case that no expert report would be forthcoming; (2) the submission of the report was untimely; (3) the report has prejudiced Gaiser; and (4) the report is irrelevant. The court found that even on consideration of the Peterca Report, Defendant was entitled to summary judgment. Thus, Defendant's Motion to Strike is denied as moot.

### V. CONCLUSION

For the foregoing reasons, the court hereby grants Defendant's Motion for Summary Judgment (ECF No. 18), and denies as moot Defendant's Motion to Strike (ECF No. 23). Since the

court granted summary judgment in Defendant's favor, Defendant's Crossclaim for indemnity and contribution against Maresh (ECF No. 5) is dismissed as moot.

A telephonic status conference is hereby set for October 8, 2015, at 4:00 p.m.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

September 24, 2015